IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2008 SEP 30  P 2: 51

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | |
|---|---|
| ROBERT SINGLETARY | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL NO. L-05-907 |
| | : CRIMINAL NO. L-04-059 |
| UNITED STATES OF AMERICA | : |
| | : |
| Defendant. | : |

**MEMORANDUM**

Now pending is Robert Singletary's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the Court will, by separate order, GRANT Singletary's motion to vacate, so that he may pursue a direct appeal of his sentence.

**I.   Background**

On September 13, 2002, Robert Singletary ("Singletary") was arrested after a lengthy investigation conducted by Baltimore Drug Enforcement Administration Agents. The agents suspected Singletary of participating in a drug distribution conspiracy involving the transportation of large quantities of heroin and cocaine from Houston, Texas to Baltimore, Maryland.

On February 10, 2004, Singletary signed a plea agreement with Assistant United States Attorney, Christopher Romano. Singletary's attorney, Kenneth Ravenell ("Ravenell"), also signed the plea agreement. Singletary agreed to plead guilty to one count information for conspiracy to distribute "500 grams or more of cocaine and less than 100 grams of heroin," a violation of 21 U.S.C. § 846(b)(1)(B)(ii).

**A.    The Plea Agreement**

The plea agreement advised Singletary that the statutory penalty for his offense carried a mandatory minimum sentence of five years, with a maximum sentence of 40 years. The plea agreement also informed Singletary that he would be sentenced under the Sentencing Guidelines,[1] and included the following language:

> This Office and your client agree that there are no offense characteristics, sentencing guideline factors, potential downward departures or adjustments that will be raised or are in dispute. Specifically, the parties understand and agree that no role adjustment, upward or downward will be sought. . . and that the "safety valve" provision pursuant to U.S.S.G. § 5C1.2 is not applicable based on U.S.S.G. § 5C1.2(a)(5).

Finally, the agreement advised Singletary that by signing the plea, both he and the government were waiving all rights to appeal the sentence imposed with the exclusive exception that either party might appeal from "an upward or downward departure from the guideline range that is established at sentencing."

**B.    The Plea Colloquy**

Singletary pled guilty at his arraignment before the undersigned on February 10, 2004. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the Court asked Singletary a series of questions at his arraignment to establish that his plea was knowing and voluntary.[2]

> The Court: has anyone attempted to force you against your own free will to enter into this plea agreement?
> The Defendant: No.

---

[1]    The United States Sentencing Guidelines were mandatory until January, 2005, when the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), rendered them advisory.

[2]    These excerpts were taken from the transcript of Singletary's arraignment and guilty plea, February 10, 2004.

. . .

The Court: Have you reviewed in detail the letter of February 9, 2004? [the plea agreement]
The Defendant: Yes.
The Court: Has Mr. Ravenell explained the letter to you to your satisfaction?
The Defendant: Yes.
The Court: Are there any questions that you would like to ask Mr. Ravenell or me this afternoon?
The Defendant: No.

. . .

The Court: Good. Let us, then, talk about sentencing. If you look at the third paragraph of the plea agreement. . . you will see a statement of the maximum statutory sentence applicable to your case. . . Have you reviewed this paragraph, and do you believe that you fully understand the maximum statutory sentence that might apply in your case?
The Defendant: Yes.

. . .

The Court: Now, you will see that you and the government have, beginning at page 3, paragraph 5, reached certain agreements about the sentencing guidelines. These stipulations are binding upon you and the government. They constitute an agreement between you and the government. . . So you are agreeing to plead guilty without knowing what your exact sentence will be, and you understand that, do you not?
The Defendant: Yes, I do.

. . .

The Court: The law gives both you as the defendant and the government the right to take an appeal from my factual and legal findings. This right of appeal is one that can be given up, it can be waived, and you will see at page 6, paragraph 8, that both you and the government had given up the majority of your rights to appeal how the sentence is determined. And have you discussed this with Mr. Ravenell as well, sir?
The Defendant: Yes.
The Court: I'm now looking at the last page of the plea agreement, I see your signature, also Mr. Ravenell's signature. Your signature appears below the following statement that begins on page 7. "I have read this agreement and carefully reviewed every part of it with my attorney. Specifically, I have reviewed the factual and guideline stipulation with my attorney and I do not wish to change

any part of it. I understand this plea agreement, and I voluntarily agree to it. I'm completely satisfied with the representation of my attorney." Is that your signature, and is the statement that I just read true and correct?
The Defendant: Yes.

### C.     Sentencing

On June 25, 2004, the Court sentenced Singletary, following the pre-Booker protocol under which the now-advisory Sentencing Guidelines were mandatory. Because Singletary's offense involved two different drugs, the Court used the drug equivalency table to calculate a single offense level[3] of 28, pursuant to § 2D1.1(c)(6). Aside from a two-level downward adjustment for acceptance of responsibility, pursuant to § 3E1.1(a), Singletary received no other adjustments. Accordingly, his total offense level was 26. Because Singletary had no criminal history "points" under the Sentencing Guidelines, his criminal history category was I.

With a total offense level of 26, criminal history category I, the Sentencing Guidelines range was 63 to 78 months of imprisonment. At sentencing, the Assistant United States Attorney asked the Court to sentence Singletary to 78 months, which represented the high end of the range. Citing Singletary's family support and the prognosis that he will not re-offend, the Court sentenced Singletary to 63 months, which was the minimum under the then-mandatory Sentencing Guidelines system.

### D.     Singletary's § 2255 Claim

Singletary did not pursue a direct appeal of his sentence. On April 4, 2005, however, he filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. Singletary advanced three main arguments: (i) counsel was ineffective in causing him to waive his right to file a direct appeal, (ii)

---

[3]     See U.S.S.G. § 2D1.1, comment (n. 10).

4

counsel was ineffective by failing to argue for a downward departure or a reduction in sentence under the so-called "safety valve," and (iii) the Court violated his Sixth Amendment rights under the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).

On April 27, 2005, the Court dismissed the Booker claim on grounds that Booker does not apply retroactively to cases on collateral review, and Singletary had no direct appeal pending when Booker was decided.[4] Thereafter, Singletary's ineffective assistance of counsel claims, timely filed, were all that remained. In support of these claims, Singletary submitted affidavits from himself and his mother attesting that Singletary, following his sentencing, expressed to Ravennell a desire to appeal his sentence.[5] In response to a request from the Court, Ravenell submitted an affidavit stating his recollection of an exchange with Singletary and his mother following the sentencing.[6] Ravenell stated the following: "I do recall having a telephone conversation with Mr. Singletary and his mother but I honestly do not recall the substance of the conversation. It is quite possible that Mr. Singletary asked me if there was any way to attack his conviction and sentence but I honestly do not recall." The parties have submitted no additional evidence regarding the alleged post-sentencing conversation between Singletary and Ravenell.

II. **Standard**

---

[4]   See Criminal No. 04-059, Docket No. 11.

[5]   Singletary stated in his affidavit that he told Mr. Ravenell "in the [courthouse] right after I was sentenced that I wanted to appeal my sentence." The affidavit of his mother, Shirley Singletary, stated that she "was present when Robert S. Singletary informed his lawyer, Mr. Kenneth W. Ravenell[,] that he wanted to appeal his sentencing."

[6]   See Criminal No. 04-059, Docket No. 17.

Ineffective assistance of counsel claims are evaluated under the Strickland two-pronged test: the defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish the first prong, Singletary must produce evidence that his counsel's performance was not "within the range of competence normally demanded of attorneys in the criminal process." Id. As for the second prong, Singletary must demonstrate that his attorney's deficient performance resulted in actual prejudice to his case. In other words, he must show that "there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### III. Analysis

#### A.   Ineffective Assistance of Counsel at Sentencing

Singletary's ineffective assistance of counsel claim, based upon his attorney's alleged deficiencies at sentencing, fails to satisfy the Strickland standard. This is so because Singletary's claim focuses upon rights that he expressly relinquished by signing the plea agreement. Notwithstanding the fact that Singletary does not challenge the guilty plea itself, the Court has no hesitancy in finding that Singletary entered his plea agreement knowingly and willingly.[7] Singletary is college educated and fully literate. He acknowledged at the arraignment that he had discussed the plea agreement with his counsel, and that he was satisfied with his counsel's

---

[7] Sentencing appeal waivers are generally enforceable. United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). Similar to plea agreements, waivers of appeal must be "knowingly and intelligently" made. Id. at 169. Based on Singletary's plea colloquy, the Court finds that his appeal waiver was valid. The sole ground on which Singletary could appeal did not transpire - the Court imposed no upward departure.

representation. He also acknowledged that he had knowingly waived his right to appeal and that he was not entitled to any guideline adjustments not addressed in the plea agreement.

Singletary provides no proof that his attorney forced him to take the plea, or that he did not understand his rights. Both he and Ravenell were bound by the plea agreement, which included stipulations that (i) he was not entitled to a "safety valve," (ii) he was not entitled to any departures, and (iii) he had a very limited right to appeal.

Nor does Singletary offer any proof that Ravenell's advisement in favor of accepting the plea agreement was professionally unreasonable. The government was prepared to indict Singletary for numerous additional crimes. Confronted with the considerable evidence already collected by the government, Singletary might well have received a much longer sentence had he been indicted and convicted by a jury. Singletary also received a two-level downward adjustment for acceptance of responsibility through the plea agreement. As such, Ravenell's assistance secured a sentence that was close to the statutory mandatory minimum.

There is no proof, therefore, that counsel's assistance was deficient in any way at sentencing. This finding alone defeats Singletary's ineffective assistance clam. Without deficient performance, there can be no prejudice.

**B.     Ineffective Assistance of Counsel for Failure to Appeal the Sentence**

Singletary also claims ineffective assistance of counsel based upon his attorney's failure to file a direct appeal of the sentence. Singletary argues that shortly after the sentencing he instructed Ravenell to note appeal, although he was aware that he had expressly waived his right to appeal (except in the event of an upward or downward departure from the guideline range).

7

Singletary's position is based upon the Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000), which held that when a defendant unambiguously conveys his desire to file an appeal, counsel's failure to follow the client's "express instructions" is both professionally unreasonable and presumptively prejudicial under Strickland.

A point of distinction between Flores-Ortega and the case at bar is that the defendant in Flores-Ortega signed a plea agreement that did not include an appeal waiver and was specifically instructed by the trial judge of his right to appeal the judgment. 528 U.S. at 474. Indeed, the Court noted that one "highly relevant factor" in determining whether counsel had a constitutionally-imposed duty to consult with the defendant about an appeal was whether the conviction followed a trial or a guilty plea. Id. at 480. The Court explained that this factor was significant " both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. The Fourth Circuit, however, recently joined the Second, Ninth, Tenth, and Eleventh Circuits in extending the Flores-Ortega holding to guilty pleas accompanied by appeal waivers. See United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007) (holding that "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, *even if doing so would be contrary to the plea agreement* and harmful to the client's interests") (emphasis added). Accordingly, Singletary's ineffective assistance claim must be analyzed under the Flores-Ortega framework.

The Flores-Ortega decision sets out a two-part analysis for addressing ineffective assistance of counsel claims. A counsel's constitutionally-imposed duty to consult with his client regarding an appeal is triggered when there is reason to think either (1) that a "rational

defendant" would seek an appeal, or (2) that this particular defendant has "reasonably demonstrated" to counsel his or her interest in filing an appeal. 528 U.S. at 480. Singletary alleges that his attorney's performance was deficient under the latter mode because he expressly communicated to Ravenell that he was interested in appealing the sentence. The Court is unable to establish, based upon the record, whether Singletary's interest in filing an appeal was "reasonably demonstrated" to his attorney. Ravenell's affidavit acknowledges that a conversation with Singletary and his mother did, in fact, take place, but states that he is unable to recollect the substance of that conversation.[8] Given the uncontested evidence offered by Singletary and his mother that Singletary unambiguously informed Ravenell of his decision to file an appeal, the Court must accept Singletary's account. See Poindexter, 492 F.3d at 269.[9]

Consequently, the Court finds that Singletary has satisfied the first prong of the Strickland test by showing that counsel's disregard of his specific instruction to file a notice of appeal was professionally unreasonable. See Flores-Ortega, 528 U.S. at 477; Rodriquez v. United States, 395 U.S. 327 (1969). In addition, the second prong of the Strickland test is satisfied because the constitutionally deficient performance of Singletary's attorney has prejudiced Singletary by depriving him of an appeal that he would otherwise have taken. See

---

[8] See Criminal No. 04-059, Docket No. 19.

[9] In Poindexter, the Fourth Circuit advised that district courts should hold an evidentiary hearing if the record was unclear as to whether the attorney had been unambiguously instructed to file an appeal. 492 F.3d at 272. Because the Court has not been apprised of any additional evidence that might clarify the content of this conversation between Singletary and his attorney, it is appropriate to conclude that Singletary did "unequivocally instruct" Ravenell to file an appeal, thus bypassing the need for an evidentiary hearing.

Flores-Ortega, 528 U.S. at 484. Singletary, therefore, has adequately presented a claim for ineffective assistance of counsel due to the failure of his attorney to file an appeal.

## IV.   Conclusion

For the foregoing reasons, the Court will, by separate order, GRANT Singletary's § 2255 motion and DIRECT the clerk to VACATE Singletary's Judgement and Commitment Order.[10] The Court further DIRECTS the clerk to ISSUE an amended Judgment and Commitment Order from which an appeal can be taken.

Dated this 30TH day of September, 2006.

Benson Everett Legg
Chief Judge

---

[10]   Criminal No. 04-059, Docket Nos. 7-8.